CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division “M”, wherein the Honorable Robert J. Burns rendered judgment in favor of plaintiffs and against defendant. We affirm.
Tomlinson Geophysical Company hired defendant, Quality Exploration Company, Inc. (Quality), to conduct geophysical expío- *635 ration in the southern part of Jefferson Parish. Eight oyster beds were located in the immediate area Quality wished to explore. These eight oyster beds were leased by plaintiffs, W.A. Kass, IV., Carolyn Kass Tabor Falgout, and Westside Oyster Farms, Inc. Defendant’s permit agent, Ken Broussard, sought out Mr. Kass and executed a “permit contract” whereby defendant agreed to pay plaintiffs “... $1,000.00 per crossing plus $300.00 per shot hole shot and drilled for damages.”
Two weeks after executing this contract, Mr. Kass observed several survey marking poles placed along a line running through his leases. Mr. Kass contacted Quality regarding placement of the surveying poles and requested payment for the “crossing” of his leases. Payment was not forthcoming and this action followed.
The trial court rendered judgment in favor of plaintiffs in the amount of Six Thousand Dollars ($6,000) representing a crossing by Quality’s surveyor upon six of plaintiffs’ eight leases. After concluding that defendant’s surveyor had gone upon plaintiffs’ leases setting the poles Mr. Kass saw, the trial court, in reasons orally given, further concluded that this was a “crossing” as set forth in the “permit contract.” Defendant appeals asserting such conclusion to be error.
At trial, Mr. Kass testified he observed surveying poles staked across the oyster leases in question. A map of the general area that was to be tested shows a seismic line, numbered 1126, running through six of plaintiffs’ eight leases. Mr. Kass identified these as leases 24676, 20142, 21083, 20129, 20703 and 19396. A survey was to be conducted along line 1126 and shot holes were to be shot and drilled.
Defendant’s witness, Julian J. Anderson, admitted that defendant’s surveyor had performed some work along the survey line. Although he believed most of the survey work had been performed to the south of plaintiffs’ leases, he could not state with certainty that no survey had been done on plaintiffs’ leases.
The trial court concluded:
It’s plain from this evidence that Quality Exploration, through its permit agent, a Mr. Broussard, secured certain permits for this line called 1126; that some work began on the lower end of this line, and the testimony is that the line was not shot, but that only the permits were— were obtained. It seems to me, from hearing all of this evidence, that the surveyor, in all probability, did cross the property of the plaintiff and did set these survey poles on his property. I make that conclusion after hearing his testimony and the testimony of Mr. Anderson. The surveyor is not available; neither is — neither are his notes available or his survey plan. So I believe that, as I indicated, that the surveyor did go on the property of the plaintiff, and did make his marks or set his poles on the property of the plaintiff, and I believe it was probably done in the six leases that were mentioned: 24676, 20142, 21083, 20129, 20703 and 19396.
After a complete review of the record, we cannot say the trial court’s conclusion is “clearly wrong”. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Finding defendants did go upon six of plaintiffs’ leases, we now consider whether the surveyor’s movement constitutes a “crossing” as contemplated by the “permit contract.” The contract in question simply states, “... $1,000.00 per crossing.”
Appellant contends that “crossing” means the laying of seismic survey cables and the operation of marsh buggies and similar large equipment over plaintiffs’ leases. This contention is supported by the testimony of Mr. Anderson. Plaintiffs contend that the action of the surveyor alone is sufficient to satisfy the meaning of “crossing.”
'The trial court, in reasons orally given, resolved this question as follows:
Now, the question is whether the plaintiff is entitled to recovery under this agreement because the surveyor may have — may have set these poles, and I think the plaintiff is entitled to recovery.
*636 This document was drawn by Quality Exploration Company; it’s their contract, if you will. Mr. Broussard filled in the written portion of the contract. They were to pay a thousand dollars per crossing; I can’t hold Mr. Kass nor his corporation to a technical interpretation of the word “crossing.” Quality Exploration has one idea of what crossing means, and the plaintiff has another idea. Since there is ambiguity in this contract, I believe, and it was drawn by them, I construe any ambiguities against the defendant, Quality Exploration, and therefore consider the term “crossing” in its broadest possible terms, that is, what a standard Webster’s Dictionary would give to it, and I believe a standard definition of “crossing” would include the crossing made by the surveyor.
It is well settled that ambiguities in a contract are to be construed against the party who prepared it. LSA-C.C. Articles 1957, 1958.
Without question, defendant prepared the “permit contract” as well as filling in the part concerning compensation for crossings. We, as did the trial court, construe the meaning of “crossing” most favorable to the “other party” — plaintiffs. LSA-C.C. Article 1958. After completely reviewing the record, we cannot say the trial court was manifestly erroneous (clearly wrong) in its interpretation of the term “crossing.”
Accordingly, for the foregoing reasons, the judgment appealed is affirmed with appellant to pay all costs.
AFFIRMED.